IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH SMECK, : | |
| : | Case No. 19-cv-3625-JMY |
| v. : | |
| : | |
| COMCAST CABLE COMMUNICATIONS : | |
| MANAGEMENT, LLC, et al. : | |

**MEMORANDUM**

**YOUNGE, J.**                                                                                   **November 25, 2020**

Currently before this Court is a Renewed Motion to Compel Arbitration & Stay Proceedings filed by the Defendants, Comcast Corporation, Comcast Business Communications, LLC, and Comcast Cable Communications Management, LLC (hereinafter "Comcast"). (Mot. Compel Arb., ECF No. 23.) For the reasons discussed below, this Court will grant the Renewed Motion to Compel Arbitration & Stay Proceedings without holding oral argument. Fed. R. Civ. P. 78, L.R. 7.1(f).

**I.      BACKGROUND:**

  **A.      Procedure:**

Plaintiff, Joseph Smeck, brought this employment discrimination action against his former employer, Comcast. In the Complaint, he alleges violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq*. ("ADEA"), the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* ("PHRA"), the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1100, *et seq.* ("PFPO"), and the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"). (Complaint § I. Introduction, ECF No. 1.)

Comcast filed a Motion to Compel Arbitration & Stay Proceedings.  (Original Mot. Compel Arb., ECF No. 11.)  After a review of the original Motion to Compel Arbitration & Stay Proceedings, this Court entered an Order denying the motion without prejudice to file a renewed motion at the conclusion of discovery related to the dispute resolution agreement.  (Order, ECF No. 20.)  The Order directed the parties to conduct discovery limited to issues raised in the Motion to Compel Arbitration & Stay Proceedings.  (*Id.*)

**B.** **Facts:**

Plaintiff alleges that at age 58, he was unlawfully managed out of his employment because of his age, disability, and use of a protected medical leave of absence under the ADA, FMLA, and accompanying state law.  (*see generally* Complaint.)  Plaintiff began working for Comcast as an independent contractor in February of 2013 and was hired as a full-time employee on or about January 4, 2014.  (Compl. ¶ 20.)  Plaintiff left work early on March 28, 2018 because he was not feeling well.  (*Id.* ¶¶ 27 & 28.)  The following day, March 29, 2018, Plaintiff underwent a cardiac catheterization and had a stent surgically implanted in his heart.  (*Id.* ¶ 29.)  Following his surgery, Plaintiff was diagnosed with coronary artery disease (*Id.* ¶ 30), and he required a recovery period of approximately seven (7) weeks following the insertion of the stent.  (*Id.* ¶ 32.)  During this seven (7) week period, Plaintiff was unable to work.  (*Id.* ¶ 32-33.)

Plaintiff avers that Comcast granted his request for a medical leave of absence under the Family Medical Leave Act.  (*Id.* 38.)  He further alleges that the leave of absence was a "reasonable accommodation" within the meaning of the ADA, PHRA and PFPO.  (*Id.* 36.)  Plaintiff returned to work on May 21, 2018 to what he described as a hostile and abusive environment.  (*Id.* ¶ 39-40.)  After receiving several negative evaluations (*Id.* ¶ 45, 53 & 59),

Plaintiff was informed on December 5, 2018 that he would be terminated effective December 7, 2018. (*Id.* ¶ 65.)

In its renewed Motion to Compel Arbitration & Stay Proceedings, Comcast cites to an Offer Letter that Plaintiff signed on December 9, 2014 prior to beginning full-time employment with Comcast. (Mot. Compel Arb., Offer Letter, Ex A., ECF No. 23-2.) The Offer Letter references a dispute resolution program, Comcast Solutions, that the parties agreed to use to resolve employment related disputes. With respect to the Comcast Solutions program, the Offer Letter reads in relevant part:

> Comcast has a dispute resolution program for its employees, known as Comcast Solutions, which provides a three-step process (facilitation, mediation and binding arbitration) for resolving a variety of workplace legal issues should there be any that arise between you and the Company during or after your employment. A brochure with information and directions on how to obtain additional information related to the program is being provided to you along with this offer letter. Please review this information carefully, as the program affects the legal rights of both you and the Company (including a waiver of the right to bring a civil action in federal or state court or before a civil judge or jury, as well as a waiver of the right to bring or participate in a class action, collective action or representative action). If you cannot locate the brochure, have any questions or need additional information regarding Comcast Solutions, please call, toll free, 855-838-4180, or email to Comcast_Solutions@cable.comcast.com. By accepting this offer of employment with the Company and signing below, you acknowledge that you understand the terms of the Comcast Solutions program and also acknowledge that both you and the Company agree to participate in and be bound by the terms of the Comcast Solutions Program.

(Offer Letter, p. 2.)

Plaintiff read and signed the Offer Letter. (Joseph Smeck, Disc. Transcr., p. 17, 39-40, Ex 2., ECF No. 23-3.) He also received a copy of the Comcast Solutions Brochure along with the Offer Letter. (*Id.*) The Brochure encouraged prospective employees to consult additional materials concerning Comcast Solutions program including the Comcast Solutions Program Guide (Mot. Compel Arb., Program Guide, Ex. B., ECF No. 23-2) and the Comcast Solutions

3

Frequently Asked Questions.  (Mot. Compel Arb., Frequently Asked Questions, Ex. C., ECF No. 23-2; Mot. Compel Arb., Comcast Solutions Brochure, Ex. A., ECF No. 23-2.)

The Comcast Solutions Brochure, clearly states:

> To participate in the Comcast Solutions program, both you and the company waive the right to a civil action or a jury trial for any covered claims.  You also waive the right to bring or participate in a class action or in a collective or representative action on covered legal claims, to the fullest extent permitted by law.  All covered legal claims will be handled through the three-step Comcast Solutions process; both you and the company will be bound by the final decision of the arbitrator.

(Comcast Solutions Brochure, p. 8.)

During his tenure with Comcast, Plaintiff repeatedly reaffirmed the agreement between himself and Comcast to resolve employment related disputes using the Comcast Solutions program and to be bound by the terms and conditions of the Comcast Solutions program.  (Mot. Compel Arb., Acknowledgment Forms for 2016, 2017, and 2018, Ex. F., ECF No. 23-2.)  One of the key features of Comcast Solutions program is that it provides for the resolution of disputes before an arbitrator approved by either the American Arbitration Association or Judicial Arbitration and Mediation Services (JAMS).  (Comcast Solutions Brochure, p. 6, 10.)

**II.   LEGAL STANDARD:**[1]

Whether a district court considers a motion to compel arbitration under a Federal Rule of Civil Procedure 12(b)(6) standard or a summary judgment standard depends on whether the Complaint sets forth the basis for arbitration.  "[W]hen it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule12(b)(6) standard . . . .'"  *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 776 (3d Cir. 2013) (*quoting Somerset Consulting, LLC, v. United Capital Lenders*, LLC, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)).  On the other hand, "a Rule 12(b)(6) standard is

inappropriate when . . . 'the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity' to establish on its face that the parties agreed to arbitrate." *Id.* at 774. (*quoting Somerset*, 832 F. Supp. 2d at 482). Under the latter circumstances, we "use the summary judgment standard under Rule 56(a), in which 'the motion [to compel] should be granted where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Maddy v. GE*, 629 F. App'x. 437, 440 (3d Cir. 2015) (*quoting Flinktkote Co. v. Aviva PLC*, 769 F.3d 215, 219 (3d Cir. 2014)); *see also* Fed. R. Civ. P. 56(a). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

The court applies the summary judgment standard because a motion to compel arbitration is "in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 528 (3rd Cir. 2009). Under this standard, "the party opposing arbitration is given the benefit of all reasonable doubts and inferences that may arise." *Kaneff v. Del. Title Loans, Inc.*, 587 F.3d 616, 620 (3d Cir. 2009). "Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Vilches v. Travelers Cos.*, 413 F. App'x 487, 491 (3d Cir. 2011).

In this case, the Complaint does not reference any arbitration agreement. Rather, Defendants raise the existence of an arbitration agreement in their Motion to Compel Arbitration & Stay Proceedings to which they attached a copy of the Offer Letter, the Comcast Solutions Brochure, Comcast Solutions Program Guide, and Comcast Solutions Frequently Asked

Questions Pamphlet. Both Defendants and Plaintiff also rely on factual evidence outside of the pleadings in arguing that arbitration is or is not appropriate. Therefore, this Court applies the summary judgment standard to resolve Defendants' Motion.

### A. **Legal Standard & The Federal Arbitration Act**:

"[When a party resists arbitration under an existing arbitration clause[,] . . . the FAA allows a district court to compel . . . arbitration . . . ." *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 136 (3d Cir. 1998) (*citing* 9 U.S.C. §§ 3,4; *PaineWebber, Inc. v. Hartmann*, 921 F.2d 507, 511 (3d Cir. 1990)). Specifically, Section 4 of the FAA provides as follows:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, . . . for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

Furthermore, the FAA provides that when the court refers a case to arbitration pursuant to the FAA, it "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the [parties' arbitration] agreement." *Id.* § 3.

When deciding a motion to compel arbitration, a court must ascertain whether "(1) a valid agreement to arbitrate exists, and (2) [whether] the particular dispute falls within the scope of that agreement." *Aetrex Worldwide, Inc. v. Sourcing for You Ltd.*, 555 F. App'x 153, 154 (3d Cir. 2014) (*quoting Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009)). Pursuant to the Federal Arbitration Act ("FAA"), "[a] written provision" in a commercial contract evidencing an intention to settle disputes by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

revocation of any contract." 9 U.S.C. § 2. The Supreme Court has construed the FAA as establishing a nationwide policy favoring the resolution of disputes via arbitration that requires courts to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). Arbitration agreements may only be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *AT&T Mobility, LLC, v. Concepcion*, 563 U.S. 333, 339 (2011).

### III.   DISCUSSION:

The arguments that Plaintiff makes in an attempt to avoid dispute resolution using the Comcast Solutions program are not persuasive; therefore, the Motion to Compel Arbitration & Stay Proceedings will be granted. In an attempt to avoid using Comcast Solutions for dispute resolution, the Plaintiff cites to basic contract principles under Pennsylvania law and argues that the parties did not reach a valid or enforceable alternative dispute resolution agreement. Specifically, Plaintiff argues that the dispute resolution agreement is invalid because: (1) there was no meeting of the minds or mutual assent to the terms of the dispute resolution agreement; (2) the agreement lacks definite terms and, therefore, the parties did not believe that they were agreeing to the same thing; and (3) that the agreement fails for lack of consideration. (Memo. in Opp., p. 7, ECF No. 7.) In conjunction with his attack on the validity of the dispute resolution agreement, Plaintiff also argues that any dispute resolution agreement reached should be set aside because it is both procedurally and substantively unconscionable. (*Id.* p. 14.)

A.   <u>A Valid Contract Exists</u>.

Applying basic principles of Pennsylvania contract law, the parties reached a valid contract to submit claims to Comcast Solutions program. Arbitration is a matter of contract, and a party cannot be forced to arbitrate "unless that party has entered an agreement to do so."

*Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1114 (3d Cir. 1993); *see also Century Indem. Co. v. Certain Underwriters at Lloyd's London*, 584 F.3d 513, 524 (3d Cir. 2009). Thus, before compelling arbitration, a court must determine (1) "that a valid agreement to arbitrate exists between the parties." *Id.* "Because arbitration is a matter of contact," "[t]o determine whether the parties agreed to arbitrate, we turn to ordinary state-law principles that govern the formation of contracts." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009). Under Pennsylvania law, a valid contract requires: (1) a mutual manifestation of intention to be bound by the agreement; (2) terms sufficiently definite to be enforced; and (3) consideration. *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002).

In this instance, the mutual intent to be bound by the agreement to use Comcast Solutions for dispute resolution is evident in the fact that Plaintiff read and signed the Offer Letter on December 9, 2014. (Smeck, Disc. Transcr., p. 17, 39-40.) In Pennsylvania, as in most jurisdictions, a signature on a contract is evidence of legal assent. *Dicent v. Kaplan Univ.*, 758 Fed. Appx. 311, 313 (3d Cir. 2019); *Robbins v. Comcast Cable Communs., LLC*, No. 19-5603, 2019 U.S. Dist. Lexis 148505 at *3 (W.D. Wash. 2019) (finding that the Comcast employee validly assented to the terms of Comcast Solutions by clicking "I acknowledge" on the 2017 form); *Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 221 (3d Cir. 2008) ("Acceptance is not measured by the parties' subjective intent, but rather by their outward expressions of assent."). Furthermore, it is well-settled that an employer has "no obligation to ensure [an employee] digested the contract terms, consulted with counsel or had time to deliberate or negotiate. An employer may offer a contract to a prospective employee on a take-it or leave-it basis." *Smith v. Creative Res., Inc.*, No. 97-cv-6749, 1998 U.S. Dist. LEXIS 18545 *6 (E.D. Pa. Nov. 23, 1998)

8

("A literate adult may not avoid a contractual obligation on the ground that he did not read or understand the terms of the contract.").

The Terms and conditions for the use of Comcast Solutions for dispute resolution are sufficiently definite to establish a binding and enforceable agreement.  The Offer Letter itself clearly states that by accepting employment with Comcast and signing the letter, Plaintiff both understood the terms of the Comcast Solutions program and agreed to be bound by them.  (Offer Letter, p. 2.)  In equally clear language, the Offer Letter notified Plaintiff that his participation in the program meant that he could not "bring a civil action in federal or state court or before a civil judge or jury."  (*Id.*)  At the time that he signed the Offer Letter, Plaintiff was also provided with a copy of the Comcast Solutions Brochure that further explained how Comcast Solutions program operated.  (Smeck, Disc. Transcr., p. 39.)  The Offer Letter and the Brochure provided a phone number and email address that he could contact to obtain information about the program.  (Comcast Solutions Brochure, p. 8.)  Like the Offer Letter, the Brochure urged potential employees to consult additional, explanatory materials—including a Program Guide and Facts and Questions Pamphlet.  (*Id.* p. 8.)  The Brochure and the Program Guide along with the Facts and Questions Pamphlet were incorporated by reference into the Offer Letter and were part of the broader agreement to use Comcast Solutions for dispute resolution.  *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746. 761 (3d Cir. 2016) (under Pennsylvania law, "incorporation by reference is proper where the underlying contact makes clear reference to a separate document, the identity of the separate document may be ascertained, and incorporation of the document will not result in surprise or hardship.").

The agreement to use the Comcast Solutions dispute resolution program is clearly supported by consideration.  In this instance, both Comcast and Plaintiff agreed to resolve

9

employment related disputes through the Comcast Solutions program. (Offer Letter, p. 2; Comcast Solutions Brochure, p. 8.) The Comcast Solutions Brochure states, "By accepting employment with Comcast you are agreeing that you and the company will be bound by the Comcast Solutions program." (*Id.* p. 8.) These mutual promises to submit claims to dispute resolution in and of themselves are sufficient consideration to support the agreement to use Comcast Solutions.[2] However, additional consideration exists in this instance based on the fact that Plaintiff was employed by Comcast after signing the Offer Letter.[3] At deposition, Plaintiff testified that he was employed by Comcast for about four years after signing the Offer Letter. (Smeck, Disc. Transcr., p. 30.)

B.  There Is Nothing Unconscionable About the Agreement to Use Comcast Solutions to Arbitrate Employment Related Disputes.

Plaintiff cannot establish that his agreement to use Comcast Solutions program for dispute resolution is substantively unconscionable; therefore, the agreement cannot be set aside or invalidated based on a theory of unconscionableness. "To prove unconscionability under Pennsylvania law, a party must show that the contract [is] both substantively and procedurally unconscionable." *Quillion v. Tenet Health System Philadelphia. Inc.*, 673 F.3d 221, 230 (3d Cir. 2012) *(citing Salley v. Option One Mortg. Corp.*, 925 A.2d 115 (Pa. 2007)). This requires the plaintiff show "(1) that the contractual terms are unreasonably favorable to the drafter ('substantive unconscionability'), and (2) that there is no meaningful choice on the part of the other party regarding the acceptance of the provisions ('procedural unconscionability')." *Cardinal v. Kindred Healthcare Inc.*, 155 A.3d 46, 53 (Pa. Super. 2017) *(citing MacPherson v. Magee Mem. Hosp.*, 128 A.3d 1209, 1219 (Pa. Super. 2015).

"[T]he Pennsylvania Supreme Court has indicated that it might be appropriate to use a 'sliding scale approach' so that where the procedural unconscionability is very high, a lesser

degree of substantive unconscionability may be required and presumably, vice-versa." *Id*. "This 'sliding scale approach' does not, however, eliminate a party's obligation to demonstrate the existence of both procedural and substantive unconscionability." *Caparra v. Maggiano's Inc.*, No. 14-5722, 2015 U.S. Dist. Lexis 116409 *5 (E.D. Pa. 2015).

On the issue of substantive unconscionability, the Third Circuit has "consistently recognized that arbitration provisions that confer an 'unfair advantage" upon the party with greater bargaining power are substantively unconscionable." *Nino v. Jewelry Exchange, Inc.*, 609 F.3d 191 (3rd Cir. 2010). Numerous factors may make an arbitration provision substantively unconscionable, including severe restrictions on discovery, high arbitration costs borne by one party, limitations on remedies, and curtailed judicial review." *Ostroff v. Alterra Healthcare Corp.*, 433 F. Supp. 2d 538, 453 (E.D. Pa. 2006). Essentially, an arbitration provision is substantively unconscionable if it "creates an arbitration procedure that favors one party over another." *Id.*

There is nothing in the facts of the case *sub judice* to suggest that the agreement to arbitrate claims is substantively unconscionable in this instance. Applying well established precedent, courts located in in Pennsylvania have repeatedly held that arbitration agreements in the employment context are not substantively unconscionable. *Smaller v. JRK Residential Mgmt. Corp.*, No. 16-cv-2066, 2017 U.S. Dist. LEXIS 21158 *7 (E.D. Pa. Feb. 15, 2017); *Seme v. Gibbons, P.C.*, No. 19-0857, 2019 U.S. Dist. LEXIS 106704 *14-16 (E.D. Pa. June 26, 2019); and *Styczynski v. MarketSource, Inc.*, 340 F. Supp. 3d 534, 542-544 (E.D. Pa. 2018).

With regard to substantive unconscionability, Plaintiff specifically argues that the Comcast Solutions program unfairly limits discovery and the length of the arbitration proceeding. The Comcast Solutions Program Guide reads in relevant part:

> Discovery will be conducted over a 90-day period, with each party permitted to take up to four depositions (or a total of 32 hours of deposition time), including any expert depositions, and to propound up to 20 interrogatories and 15 document requests to the other party.  The parties will be entitled to subpoena third parties for deposition or production of documents and information.  Any discovery disputes (as well as any requests to take additional discovery outside of these guidelines) will be submitted to and resolved by the Arbitrator.  Upon completion of discovery, an arbitration hearing will be scheduled to last no more than two 8 - hour days (although either party may submit a request to the Arbitrator for a longer hearing to be scheduled, if the party is able to demonstrate that additional time is necessitated by the complexity of the case).

(Comcast Solutions Program Guide, p. 6.)

Highlighting the fact that the Comcast Solutions program specifically allows the arbitrator to permit additional discovery and a more-lengthy arbitration proceeding where necessary, several federal district courts have rejected arguments that are similar to those made by Plaintiff.  *Hubbard v. Comcast Corp.*, No. 18-16090, 2020 U.S. Dist. LEXIS 128113 *21 (D.N.J. July 21, 2020) (enforcing an agreement to use Comcast Solutions program and stating that reasonable procedural limitations on discovery are not substantively unconscionable "where the arbitrator has discretion to grant additional discovery and hearing time."); *Garcia v. Comcast Cable Communs. Mgmt, LLC*, No. 16-cv-2975, 2017 U.S. Dist. LEXIS 50810, *6 (N.D. Cal. Mar. 31, 2017) (holding that reasonable procedural limits in Comcast Solutions program are not substantively unconscionable, particularly when employees can request additional discovery as needed); *Lancaster v. Communs. Mgmt. LLC*, No. 16-14446, 2017 U.S. Dist. LEXIS, 134522 *17-18 (E.D. Mich. Aug. 23, 2017) (limitations on discovery do not render the agreement to use Comcast Solutions program unenforceable or invalid and noting that either party can request additional discovery or a longer hearing); and *Bush v. Comcast Cable Communs. Mgmt. LLC*, No. 19-cv-1004, 2020 U.S. Dist. LEXIS 130428 *22 (W.D. Pa. July 22, 2020) (finding that the Comcast Solutions program was not substantive unconscionable).

## IV. CONCLUSION:

For these reasons, the Motion to Compel Arbitration & Stay Proceedings is GRANTED, and an appropriate Order will be entered.

By the Court:

/s/ John Milton Younge
_____
Judge John Milton Younge

---

[1] In their briefing on the Motion to Compel Arbitration & Stay Proceedings, the parties applied Pennsylvania law. Both parties cited to Pennsylvania Law and neither party argued for the application of foreign law. Therefore, this Court applies Pennsylvania law when analyzing this motion. *See Booth v. BMO Harris Bank, N.A.*, No. 13-5968, 2014 U.S. Dist. LEXIS 111053 (E.D. 2014) (parties must raise choice-of-law issue in arbitration enforceability context); *See Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014) (applying the forum state's law when "neither party presented a timely argument that the motion is governed by the law of any jurisdiction other than the forum state.")

[2] Mutual promises to submit claims to arbitration are sufficient consideration to support an arbitration agreement. *See McLean v. Byrider Sales of Ind. S, LLC,* No. 13-0524, 2013 U.S. Dist. LEXIS 126940 (S.D. Ohio 2013); *Collier v. Real Time Staffing Servs. Inc.*, No. 11-6209, 2012 U.S. Dist. LEXIS 50548 (N.D. Ill. 2012); *Johnson v. Circuit City Stores*, 148 F.3d 373 (4th Cir. 1998); and *Moore v. Hobby Lobby Stores, Inc.*, No. 10-0262, 2010 U.S. Dist. LEXIS 76964 (E.D. Ark. 2010).

[3] In Pennsylvania, it is a well settled legal principle that adequate consideration exists for an agreement attendant to an employment relationship where the agreement was entered into at the inception of the relationship, even where the employment is at-will. *See Rullex Co., LLC v. Tel-Stream, Inc.*, 2020 Pa. LEXIS 3294 *15 (Pa. Supreme 2020) ("for a restrictive covenant executed after the first day of employment to be enforceable absent new consideration, the parties must have agreed to its essential provisions as of the beginning of the employment relationship."); *see also Modern Laundry & Dry Cleaning v. Farrer*, 536 A.2d 409, 411 (Pa. Super. 1988) (discussing consideration and restrictive covenants in employment agreements and stating, "as long as the restrictive covenant is an auxiliary part of the taking of employment and not a later attempt to impose additional restrictions on an unsuspecting employee, a contract of employment containing such a covenant is supported by valid consideration and is therefore enforceable."); *Barb-Lee Mobile Frame Co. v. Hoot*, 206 A.2d 59 (Pa. 1965) (stating that if a noncompetition

clause is executed at the inception of the employment, the consideration to support the covenant may be the award of the position itself); *Morgan's Home Equipment Corp. v. Martucci*, 136 A.2d 838 (Pa. 1957) (holding covenant not to compete may be enforceable if contained in an employment agreement executed upon the taking of employment); *see generally Grant v. Phila. Eagles LLC*, No. 09-1222, 2009 U.S. Dist. LEXIS 53075 *16 (E.D. Pa. June 24, 2009) (collecting cases that discuss employment as consideration in support of an arbitration agreement).